UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

ELECTRONICALLY FILED

| | | |
|---|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON | ) | Case No. 7:07-CV-00051-GFVT |
| PLAINTIFFS | ) | |
| vs. | ) | |
| | ) | |
| N.F.C. MINING, INC., ET AL | ) | |
| | ) | |
| DEFENDANTS | ) | |

# PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Come the Plaintiffs, Certain Underwriters at Lloyd's of London, (hereinafter referred to as "Certain Underwriters"), by counsel, and for its Reply to Defendants', N.F.C. Mining, Inc., Jesse Rudd, and Clark D. Pergrem, Response to Certain Underwriters' Motion for Summary Judgment state as follows:

## ARGUMENT

The primary pollution exclusions at issue in the Lloyds policy are as follows:

**TOTAL POLLUTION EXCLUSION ENDORSEMENT**

This insurance does not apply to:

f. Pollution

(1) "Bodily Injury" or "Property Damage" which would have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

**SEEPAGE AND/OR POLLUTION AND/OR CONTAMINATION EXCLUSION**

Notwithstanding any provision to the contrary within the policy of which this endorsement forms part (or within any other endorsement which forms part of this policy) this policy does not insure:

a. any loss, damage, cost or expense, or

b. any increase in insured loss, damage, cost, or expense, or

c. any loss, damage, cost, expense, fine, or penalty which is incurred, sustained, or imposed by order, direction, instruction or request of, or by any agreement with any court, government agency or any public, civil or military authority, or threat thereof. (and whether or not as a result of public or private litigation

The term "any kind of seepage or any kind of pollution and/or contamination" as used in this Endorsement includes (but is not limited to):

a) seepage of, or pollution or contamination by anything, including but not limited to, any material designated as a "hazardous substance" by the United States Environmental Protection Agency or as a as a "hazardous substance" . . . or any substance designated or defined as toxic, dangerous, hazardous or deleterious to persons or the environment under any other Federal, State, Provincial, Municipal, or other law, ordinance or regulation; and

b) the presence, existence or release of anything which endangers or threatens to endanger the health, safety or welfare of persons or the environment.

**EXCLUSIONS: COVERAGE B.**

This insurance does not apply to:

a. "Personal or Advertising Injury"

(10) Arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

These exclusions preclude coverage for any and all of the claims brought by the Plaintiffs in the underlying Bartram Litigation regardless of whether the Coverage A or Coverage B under the Certain Underwriters at Lloyd's, London policy is implicated.

## I. The Certificate of Insurance Does Not Alter the Provisions of the Policy.

Lloyd's Exhibit 1 to the deposition of Kim Hardy (attached hereto as Exhibit "A") is the policy declarations page that lists all the coverage parts, endorsements and other documents that comprise policy CMC 1113. The certificate of insurance/Form SME-29 is not listed among these items and therefore it is not a contractual part of the policy.

In Ann Taylor Inc., v. Heritage Ins. Serv. Inc, et al, 259 S. W. 3d 494 (Ky. App. 2008), the court had to determine whether an exclusion in an insurance policy precluded coverage, when that exclusion was not mentioned in a certificate of insurance. Ann Taylor Inc., contracted with an interstate trucking company to ship cargo from Louisville, Kentucky, to its other warehouse facilities. The shipping contract required the carrier to have insurance coverage for cargo claims. A load of clothing was stolen from a truck stop while the driver was inside the building. Ann Taylor submitted a claim to the carrier's insurer, Fireman's Fund. Fireman's Fund declined coverage based on a policy exclusion that precluded coverage for theft if the vehicle was left unattended. Ann Taylor, brought suit for negligent misrepresentation for failure to disclose the existence of the unattended vehicle exclusion in the policy. Ann Taylor claimed that it relied on a certificate of insurance (referred to as a "COI") confirming the existence of insurance coverage as required under the shipping agreement, that did not mention any unattended vehicle exclusion. The Defendants moved for summary judgment on the grounds that Ann Taylor could not have reasonably relied upon the COI. The trial court found in favor of the Defendants and Ann Taylor appealed.

The court focused on the elements of a claim for negligent entrustment as set out in Presnell Const. Managers Inc., v EH Constr., LLC, 134 S.W. 3d 575 Ky. 2004), the primary element of which is "justifiable reliance on the information." Id. at 496. The court noted that the COI recited that it was for informational purposes and should not be relied upon to determine the extent of insurance coverage, and also set out the policy number, effective dates, and the applicable limits of coverage. It did not, however, set out any of the policy exclusions. The court began its analysis with this citation:

> Where an entity requires another to procure insurance naming it an additional insured, that party should not rely on a mere certificate of insurance, but should insist on a copy of the policy. A certificate of insurance is not part of the policy -- if it states that there is coverage but the policy does not, the policy controls. Russ & THOMAS F. SEGALLA, COUCH ON INSURANCE § 242:33 (3d Ed. 2008). Id. at. 498.

Because no Kentucky case had dealt with certificates of insurance, the court relied upon authority from other jurisdictions. The court cited Tribeca Broadway Assoc's LLC v. Mount Vernon Ins. Co., 774 N.Y. S. 2d 11 (2004) for the proposition that "a certificate of insurance does not confer coverage and is only evidence of a carrier's intent to provide coverage." Next, the court cited Via Net v. TIG Ins. Co., 211 S.W.3d 310 (Tex. 2006), in which the court stated;

> [Plaintiff] argues, with some force, that there is little use for certificates of insurance if contracting parties must verify them by reviewing the full policy. But the purpose of such certificates is more general, "acknowledging that an insurance policy has been written, and setting forth in general terms what the policy covers." BLACK'S LAW DICTIONARY 240 (8th ed. 2004). Given the numerous limitations and exclusions that often encumber such policies, those who take such certificates at face value do so at their own risk. Id. at 498.

Also cited were TIG Ins. Co., et al, v. Sedgwick James of Washington et al., 184 F. Supp. 2d 591 (Tex. 2001) and Donegal Mut. Ins. Co. et al. v. Grossman et al., 195 F. Supp. 2d 657 (M.D. Pa. 2001), which held that a plaintiff could not prevail as a matter of

law on a negligent misrepresentation claim having relied on a COI, rather than the terms of the policy. In finding for the Defendants, the Kentucky Court of Appeals stated that "[W]hile we do not rule today regarding conflicting terms in COI's and policies, we follow the line of cases that hold that a COI is only evidence of insurance coverage and should not be relied upon by a claimant for the full terms of the policy." Id. at 501.

Although the certificate of insurance at issue here is filed with the Kentucky Natural Resources Cabinet, that does not change the reasoning above. In Campbell et al v. Shura et al, 203 U. S. App. Lexis 22714 (5th Cir. 2003) the court stated:

> Moreover, even though the parties have not raised the issue, we note that a publicly filed certificate of insurance is not the equivalent of an insurance policy under Texas law. *See R.R. Comm'n of Tex. v. W.A. Querner Co., 310 S.W. 2d 670, 673 (Tex. Civ. App.-Austin 1958, no writ)* ("The distinction between having or not having insurance and filing evidence of such insurance with the [state agency] is obvious. Nor is such distinction technical or trivial. It is one of substance. It is the existence of the insurance which protects the public, not filing it with the [state agency]."). Id. at 903-904.

The Certificate of Liability Insurance, form SME-29 (Rev. 10/99) has to be filed with the Kentucky Department for Surface Mining Reclamation and Enforcement when an applicant is seeking a mining permit. It is a form provided by the Department. See 405 KAR 10:030 Section 4 (1). The certificate in this case, recites that Lloyd's issued to NFC Mining Inc., policy CMC 1113, with the effective October 2nd, 2003, and continuing until cancelled, non-renewed or changed. It further states that the policy provides personal injury and property damage insurance covering the obligations imposed "by the provisions of the surface mining law of the Commonwealth of Kentucky (KRS Chapter 350) or regulations promulgated in accordance therewith (405 KAR 10:030 Section 4)." KAR 10:030, Section 4. (1) states that the policy shall provide for personal injury and property damage protection in an amount adequate to

compensate for all personal injury and property damage resulting from surface coal mining and reclamation operations, including damage caused by the use of explosives and damage to water wells.

KRS 350 et seq. sets out the following definitions:

> **"Surface coal mining operations"** means activities conducted on the surface of lands in connection with a surface coal mine and surface impacts incident to an underground coal mine. The activities shall include excavation for the purpose of obtaining coal, including such common methods as contour, strip, auger, extended depth secondary recovery systems, mountaintop removal, box cut, open pit, and area mining, the use of explosives and blasting, and in situ distillation or retorting, leaching, or other chemical or physical processing, and cleaning, concentrating, or other processing or preparation, and the loading of coal at or near the mine site. KRS 350.010 (1) (Emphasis added.)
>
> **"Reclamation"** means the reconditioning of the area affected by surface coal mining operations under a plan approved by the cabinet. KRS 350.010 (12)

These definitions show that the insurance requisites in the KAR only apply to actual coal mining operations and the reclamation at those sites. None of these operations occur at the N.F.C. site. The coal that is processed there is trucked in from another mine. No coal extraction occurs there. The Plaintiffs in the underlying state court action are not seeking to recover damages resulting from actual coal mining operations or reclamation (or blasting or well contamination).

Based upon the reasoning in Ann Taylor, supra., N.F.C. Mining is not entitled to rely on the certificate of insurance because it is only evidence of the existence of insurance coverage. If there is a conflict between the certificate of insurance and the actual insurance policy, the policy controls. Even if this court should determine that the SME-29 somehow effects coverage; at best, this certificate applies to actual surface coal mining and reclamation operations, not the type of process that occurred at the NFC location.

## II. The Doctrine of Reasonable Expectations Does Not Apply.

The Defendants argue that the absolute pollution exclusions in the Lloyd's policy are ambiguous so that the Defendants are entitled to coverage based on the doctrine of reasonable expectations. As explained in Woodson v. Manhattan Life Ins. Co. of N.Y., Ky., 743 S.W.2d 835 (1987) the doctrine of reasonable expectations is a corollary to the rule for construing ambiguities. If the provision in question is not ambiguous but rather "a clear manifestation of the company's intent to exclude coverage" it will defeat the application of the doctrine. Id. at 839. In Factory Mut. Ins. Co. v. Lexington Ins. Co., 2003 U.S. Dist. Lexis 2159, (W.D. Ky. 2003), in response to Factory Mutual's urging the court to consider documents outside of the insurance policy to ascertain the reasonable expectations of the parties, the court stated; "Under Kentucky law, we are constrained to the language of the policy, and can only look to the reasonable expectations of the parties if there is some ambiguity in the policy. (citation omitted) As we find no ambiguity here, we need not look to the reasonable expectations of the parties." Id. at 10.

In American States Ins. Co. v. Skrobis Painting & Decorating Inc., 513 N.W.2d 695 (WI. App. 1994), the insurer denied coverage for damages caused by a fuel spill. The court initially noted that "Further, as a matter of law, an insured cannot have a reasonable expectation of coverage where an unambiguous policy excludes coverage. . . . Thus, regardless of the alleged intentions of the parties, when unambiguous policy language precluded coverage, 'it is fundamental that no contract of insurance should be rewritten by construction to bind an insurer to a risk which it did not contemplate' according to the policy." Id. at 697. Skrobis attempted to create an ambiguity by arguing that the exclusion was not clear as to whether it excluded

coverage for ordinary negligence or from the pollution caused by the spill. To the court, this was a distinction without a difference:

> There is a difference between theories of liability for an occurrence and an occurrence itself. Although the theory of liability asserted may change, the occurrence that caused the injury will not. Here, application of the absolute pollution exclusion does not depend on "theories of liability" regarding whether, in some metaphysical sense, the property damage was caused by initial negligence, subsequent pollution, or both, but merely on the fact or "occurrence" of property damage as a result of the pollution.
> Id. at 698.

The court upheld the validity and effect of the absolute pollution exclusion citing Alcolac Inc. v California Union Ins. Co., 716 F. Supp. 1546 (D. MD. 1989) which stated:

> This pollution exclusion is just what it purports to be-absolute-and the Court perceives no reason why [the insurer] should be denied the benefit of its bargain with [the insured], as reflected in the insurance contract.

Village of Nashville, et al. v. Michigan Township Participating Plan, 2001 Mich. App. Lexis 1239 (Mich. App. 2001) involved a declaratory judgment action to determine whether an insurance policy covered the costs of cleaning up PCB contamination. The appellate court first determined that the exclusion in question "was an absolute pollution exclusion because it eliminates the once-common sudden and accidental exception to pollution exclusions" and that such exclusions were unambiguous. Id. at 4. The plaintiffs admitted that coverage for some of the claims was excluded, but they contended that the exclusion did not apply to the fraud, trespass and negligence claims. The court found that the absolute pollution exclusion applied to all claims for damages arising from the polluting event:

> The alleged damages in the breach of contract, fraud, trespass, and negligence claims all arose from the contamination of recycled fuel product caused by the presence of PCBs. . . It is undisputed that PCBs are a "pollutant" under the pollution exclusion. Under the terms of plaintiffs' insurance policy, coverage is excluded for

> damages arising out of the actual or alleged "discharge, dispersal, release or escape of pollutants" "transported, handled, stored, treated, disposed of, or processed as waste by or for the insured." Any damages claim for the alleged PCB contamination would not be covered by plaintiff's policy, and thus, there was no duty to defend against the claims in the federal litigation. Id. at 6-7.

Finally, the court found that because of the absolute pollution exclusion, the Plaintiffs did not have a reasonable expectation of coverage.

> Under the reasonable expectations rule, courts consider whether the policyholder, upon reading the contract language, is led to a reasonable expectation of coverage. (Citation Omitted) Factors involved in determining whether a policyholder had a reasonable expectation of coverage include:
>
> "'whether an insurance policy includes a provision that unambiguously limits or excludes coverage and … whether a policy holder could have sufficiently examined an insurance policy so as to discover a relevant clause which limits the coverage ….'" [*Id.* (citations omitted).]
>
> There is no ambiguity in the absolute pollution exclusion, and plaintiffs could have discovered the clause upon examination of the contract. Thus, plaintiffs did not justifiably have a reasonable expectation of coverage. Id. at 8-9.

The Rudd affidavit filed by the Defendants along with their Response does not effect the application of the absolute pollution exclusion. In Thompson et al., v. Merchant's Mutual Ins. Co. et al., 1995 Conn. Super. Lexis 490 (1995) the plaintiffs submitted affidavits claiming that an absolute pollution exclusion was never brought to their attention, and that it was difficult for the plaintiffs to determine which exclusion would apply considering the number of pages in the policy. Id. at 6. In discounting this argument, the court stated:

> The affidavits submitted by the plaintiff are insufficient to raise a genuine issue of material fact. The affidavits state that the plaintiff Carol Thompson had no discussion with her insurance agent concerning the exclusion of any environmental hazards. Additionally, the Thompson's insurance agent states that she never discussed environmental pollution exclusions in the policies, and

> she never was asked to communicate such exclusions to her customers. The plaintiffs, though, have made no allegations of fraud or misrepresentation on the part of the defendants. These affidavits fail to contradict the clear and unambiguous terms of the plaintiffs' insurance policy and, therefore, do not raise a genuine issue of material fact. Id. at 11.

In IKO Monroe, Inc., v. Royal & Sun Alliance Ins. Co. of Canada, Inc., et al., 2001 U.S. Dist. Lexis 20327 (D.C. DE 2001) the court had to determine whether an absolute pollution exclusion precluded coverage for damages arising from the emission of "disagreeable odors" from the IKO's manufacturing plant. IKO argued that it had a reasonable expectation of coverage because the insurer knew or should have known that IKO's plant produced disagreeable odors. Id. at 7. Royal Sun argued that its absolute pollution exclusion trumped all of the plaintiff's claims. The court agreed:

> IKO's third argument is that it had a reasonable expectation of coverage based on the parties' understanding that IKO's plants would normally generate disagreeable smells. IKO cites various cases from other jurisdictions in support of this position. However, as Royal Sun has pointed out, no Michigan court has held that the "reasonable expectations" doctrine applies where the contract language is unambiguous. Michigan courts have consistently stated, and recently reaffirmed, that the "reasonable expectations" doctrine applies only where the contract language at issue is ambiguous. As explained earlier, the contract provisions at issue here are unambiguous regarding the scope of coverage. Therefore, under Michigan law, IKO is not entitled to the benefit of the reasonable expectations doctrine, and the court will not apply that doctrine in this case. Id. at 15-16.

In this case, the N.F.C. Defendants had no reasonable expectation of coverage.

**III. Negligent Misrepresentation Does Not Apply to These Facts.**

First, N.F.C. Mining has not plead negligent misrepresentation as a defense or counterclaim, to Certain Underwriters at Lloyd's, London, action for declaratory judgment. Further, N.F.C. Mining has not filed a third party action against Van Wagoner Companies for

negligent misrepresentation. Significantly, N.F.C. Mining has filed just such an action against its insurance agent, Commercial Insurance Services Corporation, ("CISC") in state court in Floyd County, Kentucky. (Rudd Deposition at Pgs. 70-71 attached hereto as Exhibit "B").

Jesse Rudd is the person at N.F.C. Mining who takes care of insurance coverage. (Rudd Deposition at Pgs. 70, 75) Rudd chose CISC because it was coal-field related and it had a good reputation. (Rudd Deposition at Pg. 72) Rudd relied on Commercial Insurance Services Corporation to keep N.F.C.'s policies up to date, to alert him to the expiration dates and similar things. (Rudd Deposition at Pg. 70) The primary person at CISC that Rudd dealt with was Pat Craine. (Rudd Deposition at Pg. 73) CISC is the entity Rudd relied on to make coverage inquiries to different carriers and to bring that information back to him. Whatever insurance issues N.F.C. had, CISC was responsible for finding coverage. (Rudd Deposition at Pg. 81) Rudd never spoke to anyone at Lloyd's or any other carrier about insurance coverage. (Rudd Deposition at Pg. 76-78) At his deposition, Rudd had the original Lloyds policy CMC 1113 with him. CISC had provided it to him, as shown by the original gold embossed stickers on the front cover of the policy. (Rudd Deposition at Pg. 70. See Exhibit 4 to Rudd Deposition.) Kim Hardy works as an underwriter for the Van Wagoner Companies, an insurance broker for several insurers, including Lloyds. (Hardy Deposition at pgs 4-5, 72, attached hereto as Exhibit "A") Hardy never spoke to anyone at N.F.C. Mining regarding the insurance quotation or the policy itself. (Hardy Deposition at Pg. 79.) All communication with respect to this policy, whether by telephone, email or fax, was between Hardy and persons at CIS, N.F.C's insurance agent, specifically, Pat Craine. (Hardy Deposition at Pgs. 79-80) All the information on the application for insurance and subsequent information was provided by CIS. (Hardy Deposition at Pg. 79) It is disingenuous for Rudd to claim in his affidavit that he relied upon any

information supplied by Hardy, whether verbally, or in the form of an SME-29, when Hardy communicated exclusively with CISC, and specifically Pat Craine, who is the same person at CISC, who provided information about insurance coverage to Rudd. There was no communication between Rudd and Hardy.

A negligent entrustment claim requires proof of an actual misrepresentation, i.e. "false information." Flegles Inc. v. Tru Serv Corp., 289 S.W.3d 544 (Ky. 2009). Hardy never made any representation to anyone at N.F.C. Mining that the Lloyds policy included coverage for pollution related claims. Presnell Construction Managers, Inc. v. EH Construction, LLC, 134 S.W.3d 575 (Ky. 2004) does not apply to the facts of this case. Presnell involved a tripartite contractual relationship between the owner, the construction manager and a general contractor for the renovation of a building. The owner contracted with Presnell to supervise the project, and it contracted with EH to perform the renovation. The court adopted Restatement (Second) Torts, Section 552, and held that EH's limited pleading that Presnell supplied false information and guidance to it, was sufficient to withstand a motion to dismiss. However, this holding was based upon the relationship between EH and Presnell of construction manager and contractor that required EH to supply correct information and properly supervise the project. No such relationship exists between N.F.C. Mining and Certain Underwriters at Lloyd's, London, or Van Wagoner. The only such relationship that may support such a .claim is the one between N.F.C. Mining, and CISC. In addition, in Ann Taylor Inc., v. Heritage Ins. Serv. Inc, et al., supra., the court held that a certificate of insurance is only evidence of insurance coverage that should not be relied upon by an insured for the full terms of the policy, so that there could not be a negligent misrepresentation based on the language of the certificate.

In Classic Performance Cars, Inc. v. Acceptance Indemnity Ins. Co., 464 F. Supp. 2d 652 (S.D. Tex. 2006) an automobile dealership hired an independent contractor to repossess a customer's vehicle. The attempted repossession resulted in claims for personal injury and property damage and suit was brought against the dealership. The insurer denied coverage based on a specific exclusion that pertained to repossession activities whether conducted by the dealer or a third party. A declaratory judgment action ensued, and the dealership claimed that the insurer negligently misrepresented the terms and conditions of the policy upon which the dealer relied to its detriment. The court determined that the repossession exclusion was unambiguous and enforceable, and as such, the exclusion subsumed the dealer's claims for negligent misrepresentation.

> In its claim for "detrimental reliance," Classic Performance alleges that it "obtained insurance from [Defendant] specifically because the insurance included coverage for repossession . . . [it] relied on this coverage[,] and [Defendant] eliminated the coverage without informing [it]." (Complaint at P 3). In alleging "mistake" and negligent misrepresentation, Plaintiff claims that Acceptance Indemnity "unintentionally removed the coverage, but failed to inform [Plaintiff] that the coverage was no longer included in the policy." (*Id.* at P 4). Clearly, both of these claims are based on the insurance contract itself and are not "independent of the fact that a contract existed between the parties." Id. at 655.

Similarly, N.F.C. Mining does not claim that Certain Underwriters at Lloyd's, London, or any of its agents, represented to N.F.C. Mining that policy CMC 1113 provided coverage for pollution related claims. At best N.F.C. complains that it was not told about the pollution exclusion, even though Rudd, the person charged by N.F.C. to handle insurance issues had the original policy in his possession, that was provided to him by his own agency, CISC.

**IV. Star Fire Coals Inc, infra., is Applicable to the Facts of This Case.**

The Defendants casually dismiss the case of United States Fidelity and Guaranty Co. v. Star Fire Coals Inc., 856 F.2d 31 (6th Cir. 1988) when, in fact, there is remarkable similarity between the facts in Star Fire Coals, and the case before this court. The plaintiffs' complaint in the underlying Bartram action alleged that N.F.C. Mining engaged in the loading and unloading of coal, cleaning coal, stockpiling coal, and transporting coal at or near the residences causing a relentless and substantial accumulation of coal dust on their property. In Star Fire, supra., the plaintiff alleged that "Star Fire "on numerous occasions" operated the coal tipple in such a manner as to cause "excessive and unreasonable" amounts of coal dust to be emitted into the atmosphere. This dust allegedly drifted over and fell onto his property causing him to suffer injuries and property damage." Id. at 2.

The absolute pollution exclusion in the Lloyds' policy states that coverage will not be provided for Bodily Injury" or "Property Damage" which would have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time. The Lloyd's policy defines a pollutant as any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. The USF&G policy excluded coverage for to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental. Thus, the pollution was of the same type, and both policies had a pollution exclusion. However, the pollution exclusion in the USF&G policy had an exception if the discharge was sudden and

accidental. Like the Lloyds' policy, the USF&G policy did not specifically identify coal dust as a pollutant subject to the pollution exclusion in the policy.

In discussing the application of the USF&G pollution exclusion, the court found that;

> The pollution exclusion at issue here provides that the policy does not apply to injuries or damage arising from the discharge or release of pollutants. It is clear that this first half of the pollution exclusion clause calls off any obligations to provide coverage in cases such as this where the damages are caused by the discharge of coal dust. Id. at 33.

The court then determined that the "sudden and accidental" exception to the exclusion did not apply because the plaintiff had alleged that the coal duct contamination had been going on for years. The court refused to accept Star Fire's argument that the exclusion was "riddled" with ambiguities, but rather that the language of the exclusion was clear and plain. Thus, the court held that USF&G did not have any duty to indemnify or defend Star Fire Coals because coverage was excluded by the absolute pollution exclusion. The Sixth Circuit could not have reached this decision without finding 1) that coal dust was a pollutant; 2) that the USF&G exclusion, absent the sudden and accidental exception, precluded coverage. A pollution exclusion without the "sudden and accidental" qualifier is an absolute pollution exclusion. Village of Nashville, supra.

**V. Coverage B Claims are Excluded.**

Coverage B in the Lloyd's policy has its own absolute pollution exclusion that precludes coverage based on the reasoning above.

**VI. Miscellaneous.**

To the extent that N.F.C. argues that only the only operable exclusions are those that Rudd acknowledged in writing, Kemper National Ins. Co. et al. v. Heaven Hill Distilleries Inc., 82 S.W. 3d 869 (Ky. 2002) is instructive. In Kemper, supra., Heaven Hill tried to create an

ambiguity in an insurance policy by juxtaposing certain exclusion against each other. In dispensing with this argument the court held that "Because an exclusion is not an affirmative grant of coverage – and each exclusion is independent of all others – any applicable exclusion is sufficient to remove coverage." Id. at 874. Thus, whether Rudd signed off on some exclusions or not, is of no moment, as long as any other exclusion applies, coverage is precluded.

**CONCLUSION**

This court should grant Certain Underwriters at Lloyd's, London, Motion for Summary Judgment.

Respectfully submitted,

*/s/ Gene F. Zipperle, Jr.*

GENE F. ZIPPERLE, JR.
MARTIN OGBURN & ZIPPERLE, PLLC
Hurstbourne Place, Suite 1205
9300 Shelbyville Road
Louisville, Kentucky 40222
Telephone: (502) 736-6200
Facsimile: (502) 736-6205
gene.zipperle@mozlaw.com
*Counsel for Plaintiffs*
*Certain Underwriters at Lloyd's of London*

**CERTIFICATE**

I hereby certify that on the 21st day of October, 2009, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF System, which will send a Notice of Electronic Filing to the following:

Robert J. Patton
A. David Blankenship
Kinner & Patton
328 East Court Street
Prestonsburg, KY 41653
rjpatton@bellsouth.net
dblankenship@bellsouth.net
*Counsel for Defendants, N.F.C. Mining, Inc.*
*Clark D. Perfrem and Jesse L. Rudd*

*/s/ Gene F. Zipperle, Jr.*
*Counsel for Plaintiffs*
*Certain Underwriters at Lloyd's of London*