UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| CERTAIN UNDERWRITERS AT | ) | |
| LLOYD'S OF LONDON, | ) | |
| | ) | Civil No. 07-51-GFVT |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| N.F.C. MINING, INC., ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

*** *** *** ***

Plaintiffs, Certain Underwriters at Lloyd's of London, have filed a Motion for Summary

Judgment in their case seeking declaratory judgment. [R. 42.]  Defendants, N.F.C. Mining, Inc.,

Clark D. Pergrem and Jesse Rudd, have filed a "Memorandum of Law in Opposition to

Plaintiffs' Motion for Summary Judgment and in Favor of a Judgment Concluding Coverage Is

Applicable" [R. 44], which the Court shall construe as a cross-motion for summary judgment.

Plaintiffs subsequently filed a Reply [R. 50].  For the reasons stated below, the Plaintiffs' Motion

for Summary Judgment will be GRANTED IN PART and DENIED IN PART and Defendants'

Cross-Motion for Summary Judgment will be GRANTED IN PART and DENIED IN PART.

**I.**

This matter is related to a civil suit brought in Floyd Circuit Court against Defendants

N.F.C. Mining, Inc, Clark D. Pergrem and Jesse Rudd (hereinafter "Defendants").[1]  According to

---

[1]Pergrem and Rudd are the sole officers, directors and stockholders of N.F.C. Mining, Inc.
[Depo. of Jesse Rudd at 23-25, R. 50, Attach. 3.]

the first amended complaint in that case, several individuals who reside near a coal preparation plant operated by N.F.C. in Floyd County, Kentucky, allege they suffered personal injury and property damage from fugitive dust, coal dust and noise that originated from the prep plant. [First Amended Complaint, *Jeff Bartrum, et al. v. N.F.C. Mining, Inc., et al.*, Floyd Circuit Court Case No. 05-CI-1297, R. 42, Attach. 3.] The plaintiffs in the Floyd Circuit case (hereinafter the "*Bartrum* plaintiffs") seek compensatory damages under a variety of legal theories, including negligence, private nuisance, unintentional private nuisance, public nuisance, prospective nuisance, trespass, recklessness or gross negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, violation of Kentucky air quality statute, and violation of Kentucky noise emission statute. [*Id.*] They also demand an award of punitive damages in relation to their claims for trespass and recklessness or gross negligence. [*Id.*] From the original state court complaint and first amended complaint, it appears that the Plaintiffs here, Certain Underwriters at Lloyd's of London (hereinafter "Plaintiffs" or "Lloyd's of London"), are not parties to that action. [*Id.*, Attach 2, 3.]

Lloyd's of London subsequently filed a Complaint for Declaratory Judgment in this Court pursuant to 28 U.S.C. § 2201 seeking a declaration that a commercial general liability (CGL) policy it issued does not provide coverage to Defendants for the claims asserted by the *Bartrum* plaintiffs. [R. 1.] The primary provisions of the CGL policy in question insured N.F.C. Mining against liability arising from "bodily injury," "property damage," and "personal and advertising injury" caused by its operation of the prep plant from October 2, 2003, to October 2, 2004. [Underwriters at Lloyd's of London Policy No. CMC1113, R. 42, Attach. 9.] Lloyd's of London, however, contends that certain policy exclusions apply to vitiate its obligations to Defendants for

2

the damages from fugitive dust, coal dust and noise alleged in the state court action. In their response, Defendants argue that the policy does not exclude coverage for the damages claimed and that Plaintiffs should be estopped from denying coverage.

## II.

## A.

Because Lloyd's of London seeks a declaratory judgment, the Court, must first determine whether, in its discretion, jurisdiction is appropriate pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. In making this assessment, the Court should determine "whether the judgment 'will serve a useful purpose in clarifying and settling the legal relationships in issue' and whether it 'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Brotherhood Mut. Ins. Co. v. United Apostolic Lighthouse, Inc.*, 200 F.Supp. 2d 689, 692 (E.D. Ky. 2002) (citations omitted).

The Court must make a full inquiry into all relevant considerations, taking into account the following five factors:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*See Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000)(citations omitted).

In the instant case, it appears these factors weigh in favor of exercising discretional jurisdiction to resolve the controversy. With regard to the first and second factors, this Court can address the scope of coverage under the Policy at issue and resolve the legal relationship between

Lloyd's of London and the Defendants as a final matter.  In addressing the fourth factor, there is no evidence that this issue is one being litigated in the state action or that has been raised by the parties thereto.  In fact, it appears that Lloyd's of London is not a party.  Finally, there is no evidence that Lloyd's of London engaged in procedural fencing by bringing this action in federal court.  In fact, clear precedent exists for allowing an insurer to bring such an action to determine the scope of coverage in such a case.  *See, e.g.*, *Nationwide Mut. Fire Ins. Co. v. Creech*, 431 F.Supp. 2d 710 (E.D. Ky. 2006) (district court made declaratory judgment regarding the applicability of an insurance policy to a state tort action).  The *Creech* court noted that while it may have been better practice for the insurer to have filed the declaratory action in state court, there is "no per se rule" against doing so in a separate district court action.  *See id*. at 712 (citations omitted).  This Court agrees.

## B.

Next, Federal Rule of Civil Procedure 56(c) provides that judgment for the moving party is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Browning v. Dep't of Army*, 436 F.3d 692, 695 (6th Cir. 2006) (citations omitted).  While all inferences are drawn in favor of the non-moving party, that party still must present some affirmative evidence supporting its position to defeat an otherwise appropriate motion for summary judgment.  *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586-587 (1986) (non-movant must "do more than simply show there is some metaphysical doubt as to the material facts") (citations omitted); *Celotex Corp. v. Catrett*, 477

U.S. 317, 324-325 (1986).  Stated alternatively, "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).

## C.

At the outset, the Court notes that disposition of the motion is a matter of contract interpretation.  Although not expressly stated, the parties by their arguments appear to agree that Kentucky law governs the interpretation of this insurance contract.  Under Kentucky choice of law principles, the law of the "state [which] has the most significant relationship to the transaction and the parties" governs the interpretation and validity of contracts.  *Lykins Enterprises, Inc. v. Felix,* 2007 WL 4139637 (Ky. 2007) (citing *Breeding v. Massachusetts Indem. & Life Ins. Co.,* 633 S.W.2d 717, 719 (Ky. 1982)).  Although the insurer, Lloyd's of London, is a foreign corporation and insurance brokers from Texas were involved in the transactions leading to issuance of the Lloyd's policy, the insured is a Kentucky corporation with its principal place of business in Kentucky and the policy was meant to cover activities occurring primarily at its coal prep plant in Kentucky.   Accordingly, Kentucky has the most significant relationship to this insurance contract.

Under Kentucky law, interpretation of insurance contracts is generally a matter of law to be decided by the court.  *See, e.g., Stone v. Kentucky Farm Bureau Mut. Ins. Co.,* 34 S.W.3d 809, 810 (Ky.App. 2000).  Because the contract is one of insurance, the Court is guided by the fact that Kentucky courts, when in doubt, will often err in favor of finding insurance coverage and that the contract will be construed in favor of the insured.  "The contract should be liberally

construed and all doubts resolved in favor of the insureds, and exceptions and exclusions should be strictly construed to make insurance effective." *Kentucky Farm Bureau Mut. Ins. Co. v. McKinney,* 831 S.W.2d 164, 166 (Ky. 1992) (citations omitted). Even so, this

> rule of strict construction against an insurance company certainly does not mean that every doubt must be resolved against it and does not interfere with the rule that the policy must receive a reasonable interpretation consistent with the parties' object and intent or narrowly expressed in the plain meaning and/or language of the contract. Neither should a nonexistent ambiguity be utilized to resolve a policy against the company. We consider that courts should not rewrite an insurance contract to enlarge the risk to the insurer.

*St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward*, Inc., 870 S.W.2d 223, 226-27 (Ky. 1994) (citing *U.S. Fidelity & Guar. Co. v. Star Fire Coals, Inc.,* 856 F.2d 31 (6th Cir. 1988)). Likewise, "[r]easonable conditions, restrictions, and limitations on insurance coverage are not deemed *per se* to be contrary to public policy." *See Hugenberg v. West American Ins. Company/Ohio Cas. Group*, 2006 WL 891074, *1, *6 (Ky. App. 2006) (citations omitted).

Clear and unambiguous terms in a contract must be construed according to their "plain and ordinary meaning." *Nationwide Mut. Ins. Co. v. Nolan,* 10 S.W.3d 129, 131-32 (Ky. 1999) (citations omitted). Policies should be interpreted according to the parties' mutual understanding at the time they entered into the contract and "[s]uch mutual intention is to be deduced, if possible, from the language of the contract alone." *Id*. (citations omitted). In the event the Court finds the contract ambiguous, under the reasonable expectation doctrine, ambiguous terms in an insurance contract must be interpreted in favor of the insured's reasonable expectations and construed as an average person would construe them. *See True v. Raines,* 99 S.W.3d 439, 443 (Ky. 2003) (citations omitted). But "[o]nly actual ambiguities, not fanciful ones, will trigger application of the doctrine." *Id*. Absent ambiguity, terms in an insurance contract are to be

construed according to their "plain and ordinary meaning." *Nolan,* 10 S.W.3d at 131-32.

Guided by the foregoing principles, the Court turns now to the contract for insurance at hand.  Here, the Policy contains two coverage provisions in dispute between the parties.  Coverage A sets the terms for insuring Defendants against "bodily injury" and "property damage," as those terms are defined in the policy, and is subject to several specific exclusions.  Coverage B provides coverage for "personal and advertising injury" and also contains multiple exclusions.  The CGL policy as a whole is also subject to several policy-wide exclusions and endorsements.

Under Coverage A, Lloyd's of London agreed to pay "those sums that the insured becomes legally obligated to pay  as damages because of 'bodily injury' or 'property damage' to which this insurance applies." [R. 42, Attach. 9.]  Elsewhere in the policy, "bodily injury" is defined as "bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time." [R. 42, Attach 9.]  "Property damage" is defined to mean:

a.      Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of physical injury that caused it; or

b.      Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

[*Id.*] The *Bartrum* plaintiffs seek compensation for various injuries to their physical and emotional health and damage to their property allegedly caused by the migration of coal and other fugitive dust and emission of excessive noise at the N.F.C. prep plant.  Neither party has alleged that such damage from coal or other fugitive dust falls outside the definition of either "bodily injury" or "property damage."

Lloyd's of London contends, however, that Coverage A does not apply to damages that could have been caused by noise.  Defendants do not directly address this argument in their response, but the Court cannot conclude as a matter of law that "bodily injury" or "property damage" could not have resulted from excessive noise.  In their first amended complaint, the *Bartrum* plaintiffs allege that the N.F.C. facility operates twenty-four hours a day and creates significant disturbances associated with noise.  [R. 42, Attach 3.]  As a result, they claim they have "lost their ability to use and enjoy their respective properties" and "can no longer socialize outside, sit on their porches, decks, or stoops or otherwise enjoy the outdoors and the community atmosphere that once prevailed."  [*Id.*]  Such consequences, if proven, could constitute "property damage" as the "loss of use of tangible property that is not physically injured."   They also attribute "physical and emotional harm" to the noise generated by the prep plant.  [*Id.*]  Although a closer call, scenarios are certainly possible where noise that is either loud enough or continuous over long period of time could cause bodily injury.  Whether such injuries actually occurred is not a matter for this Court to decide.  It is sufficient to say that Coverage A provides coverage for such injuries if they did occur.

Regardless of the scope of bodily injuries and property damage provisions, Lloyd's of London argues damages from coal and other fugitive dust and noise are excluded under the policy's total pollution exclusion.  Exclusion "f." under paragraph 2 of Coverage A originally excluded from coverage bodily injury or property damage arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' in certain

circumstances.  It was replaced by a "Total Pollution Exclusion Endorsement,"[2] which states:

> This policy does not apply to:
>
> > f. Pollution
> >
> > > (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of any pollutants at any time.
> > >
> > > (2) [Not relevant herein]
> >
> > Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste.  Waste includes material to be recycled, reconditioned or reclaimed.

[R. 42, Attach 9.]  The issue thus becomes whether the fugitive coal dust and noise may be considered "pollutants" under the terms of this insurance contract, and therefore excluded from Coverage A.[3]

Defendants' arguments notwithstanding, the Court finds that the definition of "pollutants" in the policy is not ambiguous and includes dispersions of coal and other fugitive dust by the

---

[2]As part of their estoppel argument, Defendants claim that they were asked only to sign subcontractor and blasting exclusions.  Nowhere, however, do Defendants argue that the pollution exclusions were never a part of the insurance contract.

[3]Defendants employ the canon of statutory construction *expressio unius est exclusio alterius* to argue that damage from coal dust is not excluded under the policy.  That canon holds that "the enumeration of a particular thing demonstrates that the omission of another thing is an intentional exclusion."  *Palmer v. Commonwealth,* 3 S.W.3d 763, 764 (Ky.App. 1999).  Defendants' argument is based in part on a separate and independent "Asbestos, Silica Dust, [and] Toxic Substances" exclusion in the Lloyd's policy.  According to the Defendants, because the Lloyd's policy expressly excluded bodily, personal, property and advertising damage or injury caused by "silica dust" but is silent as to "coal dust," such damages from coal dust are not excluded.  This is true only insofar as the exclusion for asbestos, silica dust or toxic substances is concerned.  The Total Pollution Exclusion Endorsement and other pollution exclusions are separate provisions that are capable of excluding risks independent of other exclusions.

N.F.C. prep plant.[4]  A contractual term is ambiguous where it is subject to more than one

reasonable interpretation.  *Deerfield Ins. Co. v. Warren County Fiscal Court*, 88 S.W.3d 867,

873 (Ky.App. 2002).  Here, the plain and ordinary meaning of the pollution exclusion language

encompasses fugitive dust.  Dust, including coal dust, is without question a solid.  The only real

question is whether it is an irritant or contaminant.  According to *Webster's II New College

Dictionary*, a contaminant is "a contaminating agent."  WEBSTER'S II NEW COLLEGE

DICTIONARY 243 (Houghton Mifflin Company 2001) (1995).  "Contaminate" is likewise defined

as "to make impure by contact or mixture."  *Id.*  As a matter of common sense and experience,

coal dust and other fugitive forms of dust are known to make impure that to which they come

into contact.  As a result, the Court can easily see why the Sixth Circuit, in construing a similar

pollution exclusion under Kentucky law, concluded that "[i]t is clear that this first half of the

pollution exclusion clause calls off any obligation to provide coverage in cases . . . where the

damages are caused by the discharge of coal dust."  *U.S. Fid. & Guar. Co. v. Star Fire Coals,

Inc.*, 856 F.2d 31, 33 (6th Cir. 1988); *see also Connolly Dev., Inc. v. Northbrook Prop.& Cas. Ins.

Co.*, 1992 WL 12073422 at *3 (D. Nev. 1992) (holding that, under Nevada law, "dust is a solid

irritant or contaminant under the ordinary meaning of the language" of a pollution exclusion);

*Allen v. Scottsdale Ins. Co.*, 307 F.Supp.2d 1170 (D. Haw. 2004) (holding that fugitive concrete

---

[4]Although the Defendants do not expressly state, they appear to renew their *expressio unius* argument in the context of the definition of pollutant under the Total Pollution Exclusion Endorsement. To the extent this is so, *expressio unius* is not of any help to them.  As stated above, under the policy "pollutants" receives a general definition as "any solid, liquid, gaseous or thermal irritant or contaminant" followed by a  list of particular examples.  Such a list, however, is clearly non-exclusive. *See Connolly Development, Inc., v. Northbrook Property and Casualty Ins. Co.*, 1992 WL 12073422 at 3 (D. Nev. 1992) (construing the specific terms of a definition of pollutants to be non-exclusive where they follow general terms of the definition). Therefore application of *expressio unius* is inapposite.

dust was a pollutant as that term was defined in a pollution exclusion).

The Defendants cite case law for the proposition that coal dust is not a "pollutant" because, like sand, it is a naturally occurring material or, alternatively, ambiguity in the term pollutant creates a factual issue to be decided at trial. *See Hicks v. American Resources Ins. Co., Inc.*, 544 So.2d 952 (Ala. 1989) (finding pollution exclusion ambiguous as to natural materials such as sand but not as to acids, alkalis, and toxic chemicals); *Sellers v. Seligman*, 463 So.2d 697 (La. Ct. App. 1985) (finding that under Louisiana law pollution exclusion was ambiguous as to whether silica dust was a pollutant). The Court notes that the cases cited by Defendants interpreted insurance contracts under the laws of states other than Kentucky and thus are not controlling. Neither case, it must be added, specifically concerned the applicability of a pollution exclusion to coal dust. Most importantly, the Court is not persuaded by the reasoning in those cases. Construing "pollutant" to exclude coal dust because it is a naturally occurring material would supply additional, extraneous terms to the policy's terms and thereby do violence to their plain and ordinary meaning. Finally, because the exclusion at issue here unambiguously encompasses coal and other fugitive dust, the reasonable expectations doctrine is inapplicable. *Deerfield*, 88 S.W.3d at 873. Accordingly, Coverage A affords no coverage for damage caused by coal dust.[5]

---

[5]Defendants urge this Court to construe the Lloyd's policy in light of the SME-29 Certificates of Liability Insurance submitted on their behalf to the Kentucky Department of Surface Mining, Reclamation and Enforcement. As grounds for doing so, Defendants rely on *City of Louisa v. Newland* for the proposition that "[a]ny contract or agreement must be construed as a whole, giving effect to all parts and every word in it, if possible." *City of Louisa v. Newland,* 705 S.W.2d 916 , 919 (Ky. 1986). The certificates of insurance to which Defendants refer are required by Section 4 of 405 KAR 10:030 in connection to applications for coal mine permits. They are not, however, part of the insurance agreement between Lloyd's of London and Defendants. Instead, such certificates are merely evidence of an independent insurance contract. As the Court of Appeals for Kentucky held in *Ann Taylor, Inc. v. Heritage Ins. Services, Inc.*, a certificate of insurance supplied by a commercial trucker at the request of a

The same cannot be said as to the damages allegedly caused by noise. Lloyd's of London argues that because noise is considered to be a pollutant under certain Kentucky statutes, it must also be a pollutant as defined by the total pollution exclusion. While it is true that in some circumstances courts may refer to statutes in construing the terms of insurance policies, doing so here would violate the clear and unambiguous policy terms that define "pollutant." The pollution provision here excludes only "solid, liquid, gaseous or thermal irritants or contaminants." By definition, noise cannot be solid, liquid, gaseous or thermal in nature, and only through the tortured use of logic could it be considered an irritant or contaminant. *See Factory Mut. Ins. Co. v. Lexington Ins. Co.*, 2003 WL 329050 at *2 (W.D.Ky. 2003) (stating that construction of insurance contracts "must not become an overarching policy determination justifying the use of tortured logic to find ambiguity where in fact none exists") (citing *Hartford Accident & Indem. Co. v. Western Fire Ins. Co.*, 196 F.Supp. 419 (E.D.Ky. 1961)). Accordingly, the pollution exclusion does not apply to the extent that the *Bartrum* plaintiffs suffered bodily injury or property damage from noise originating from Defendants' prep plant.

With regard to Coverage B of the Lloyd's policy, it seems clear that this provision provides no coverage for Defendants under the circumstances. Coverage B insured N.F.C.

---

clothing retailer "does not confer coverage and is only evidence of a carrier's intent to provide coverage." *Ann Taylor, Inc. v. Heritage Ins. Services, Inc.*, 259 S.W.3d 494, 498 (Ky.App. 2008). In that case, the Court of Appeals cited approvingly the principle that "[a] certificate of insurance is not part of the policy - if it states that there is coverage but the policy does not, the policy controls" and specifically found "no meaningful difference when this precept is applied to a certificate holder as compared to an additional insured." *Id.* (citing Russ & Thomas Segalla, Couch on Insurance § 242:33 (3d ed. 2008)). This Court sees no meaningful difference when that rule is applied to certificates of insurance required by governmental agencies.

As noted above, courts are generally limited to the terms of the policy when construing insurance contracts. *Nolan*, 10 S.W.3d at 131-32. When the terms of a policy are unambiguous, as they are here, it is less certain that courts should rely on extraneous material in their construction.

Mining against "those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." [*Id*.]  Elsewhere, the policy specifies seven "offenses" that may result in personal and advertising injuries.[6]  From reading the list of offenses, it is obvious that most, if not all, of the Defendants' behavior as alleged in the first amended complaint fall well outside the scope of Coverage B.

Defendants nevertheless argue that the trespass claim in Count VI is covered under Coverage B.  Defendants do not specify what part of the definition of "personal and advertising injury" encompasses a claim for damages from trespass under the circumstances.  The Court agrees with Plaintiffs that the only remotely applicable definition is "part c," which states that "personal and advertising injury" includes "[t]he wrongful eviction from, wrongful entry into, or invasion of the right of privacy occupancy of a room, dwelling, or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor."   However, this definition is too narrow for the damages claimed.  It provides coverage only for wrongful evictions, entries

---

[6]The policy defines "personal and advertising injury" to be "injury, including consequential 'bodily injury,' arising out of one or more of the following offenses:

a.   False arrest, detention or imprisonment;

b.   Malicious prosecution;

c.   The wrongful eviction from, wrongful entry into, or invasion of the right of privacy occupancy of a room, dwelling, or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d.   Oral or written publication of material that slanders or libels a person or organization or diparages a person's or organization's goods, products, or services;

e.   Oral or written publication of material that violates a person's right of privacy;

f.   The use of another's advertising idea in your "advertisement"; or

g.   Infringing upon another's copyright, trade dress or slogan in your "advertisement".

[R. 42, Attach 9.]

or invasions of residences that are "committed by or on behalf of its owner, landlord, or lessor." In this case, there is no allegation that the Defendants owned or leased the residences occupied by the *Bartrum* plaintiffs so this definition is inapplicable.

Even if damages for trespass, nuisance or other claims were covered by Coverage B, any damages from coal dust are subject to a similar "pollutant exclusion" that applied to Coverage A. Exclusion (1) stated that Coverage B "does not apply to a. 'Personal and advertising injury' . . . (10) Arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." "Pollutants" here is defined identically as in the Total Pollution Exclusion Endorsement. Accordingly, for the reasons already discussed in relation to the Total Pollution Exclusion, Coverage B excludes damage from pollutants such as coal dust.

Finally, the Lloyd's policy here contains other exclusions that deny coverage for some of the claims brought by the *Bartrum* plaintiffs. Count II of the *Bartrum* plaintiffs' Complaint alleges that the Defendants' "intentional, willful, wanton, malicious, and unreasonable" actions materially reduced the use and enjoyment of their property and thereby constituted a private nuisance. Count VIII alleges that the *Bartrum* plaintiffs have suffered extreme emotional distress, which has been caused by the reckless or intentional acts of the Defendants.

To the extent that such claims are premised upon intentional acts by the Defendants, Plaintiffs' obligations are relieved. Exclusion "a.," titled "Expected or Intended Injury," under Coverage A, states that the insurance does not apply to bodily injury or property damage "expected or intended from the standpoint of the insured." Plaintiffs correctly note that Kentucky law enforces "intentional act" exclusions to insurance policies, *see James Graham*

*Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273 (Ky. 1991); *Walker v. Economy Preferred Ins*. Co., 909 S.W.2d 343 (Ky. App. 1995); 17 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 49:115 (4th ed. 2009).  When a policy excludes accidents that are "expected or intended from the standpoint of the insured," the Supreme Court of Kentucky clarified in *St. Paul* that an insurer owes no duty to indemnify an insured for injuries the insured intended to result from her actions. *St. Paul*, 814 S.W.2d at 276; *Walker* 909 S.W.2d at 344. For their part, Defendants have made no argument to rebut the application of the intentional act exclusion in this case.

Similarly, the *Bartrum* plaintiffs seek punitive damages for trespass and recklessness or gross negligence under Counts VI and VII of their state court complaint.  The Lloyd's policy expressly excludes coverage for such damages but will provide a defense for claims for compensatory and punitive damages if the underlying claim falls within the policy's coverage:

> This insurance does not apply to and no duty to defend is provided for any claim of or indemnification for punitive or exemplary damages.  If a claim or 'suit' shall have been brought against you for a claim within the coverage provided under the policy, seeking both compensatory and punitive or exemplary damages,  then we will afford a defense for such action.  We shall not, however, have an obligation to pay for costs, interest or damages attributable to punitive or exemplary damages.

[R. 42, Attach 9.]  Such provisions are generally valid under Kentucky law unless they are ambiguous or violate public policy.  *See Deerfield Ins. Co. v. Warren County Fiscal Court ex rel. City County Planning Comm'n*, 88 S.W.3d 867 (Ky. App. 2002).  Defendants however, point to no ambiguity or other grounds for invalidating the exclusion for punitive damages, and the Court can find none.  This provision therefore relieves Plaintiffs from the obligation to indemnify Defendants against the claims for punitive damages by the *Bartrrum* plaintiffs.

Lastly, the Court notes that the Lloyd's policy contains a Land, Water, and Air Exclusion stating that the policy "does not insure land (including but not limited to land on which the insured property is located), water, or air, however and wherever occurring, or any interest or right therein." [R. 42, Attach 9.]  Defendants raise no objection to the validity or applicability of this exclusion.

## D.

Alternatively, Defendants argue that Lloyd's of London is estopped from denying coverage for pollution-related damages because of false representations made by Lloyd's and/or its agents.  In particular, Defendants allege that when they first decided they needed a CGL policy they submitted an application to Kim Hardy, an underwriter for Van Wagoner Companies in Texas, that would comply with Kentucky's regulation of coal operations.  Hardy, whom the Defendants allege was an authorized agent of Lloyd's, reviewed their application, investigated their business operations and ultimately submitted certifications to the Kentucky Department of Surface Mining, Reclamation and Enforcement (DSMRE) to the effect that the policy issued to N.F.C. provided all coverage mandated under 405 KAR 10:030.[7]  According to Defendants, they reasonably relied on the certifications of insurance submitted by Hardy and did not purchase additional coverage for accidental pollution damage because they believed they were already fully covered for such eventualities.

_____

[7]Section 4 of 405 KAR 10:030 requires an applicant for a coal operating permit to submit a "certificate issued by an insurance company authorized to do business in Kentucky certifying that the applicant has a public liability insurance policy in force for the surface coal mining and reclamation operation for which the permit is sought. . . . The policy shall provide for personal injury and property damage protection in an amount adequate to compensate for all personal injury and property damage resulting from surface coal mining and reclamation operations, including damage caused by the use of explosives and damage to water wells."

16

Defendants' estoppel argument also must fail.  The law is well settled in Kentucky that the "risks insured against are to be determined by the terms of the policy."  *Old Republic Ins. Co. v. Begley*, 314 S.W.2d 552, 556 (Ky. 1958).  Thus, "[a] contract of insurance cannot be created or enlarged by estoppel or waiver."  *Id.* at 557.  Or, as a court has stated more recently, "the conduct or actions of the insurer . . . is not applicable to matters of coverage."  *Eckstein v. Cincinnati Ins. Co.*, 469 F.Supp.2d 444, 453 (W.D. Ky. 2007).  Accordingly, even if the Defendants are correct that they reasonably relied on the submissions to the DSMRE, the Court is without the power to estop Plaintiff's from denying coverage pursuant to the total pollution exclusion.

Nor does the Court see how *Presnell Constr. Managers, Inc. v. E.H. Constr.*, LLC, 134 S.W.3d 575 (Ky. 2004), offers any assistance to Defendants' estoppel argument.  In that case, the Kentucky Supreme Court adopted the Restatement (Second) of Torts § 552, which sets forth the elements for the tort of negligent misrepresentation.  *Id.* at 580.  However, subsection (1) of § 552 imposes on tortfeasors "liability for pecuniary loss caused" by their negligent misrepresentation.  *Presnell*, 132 S.W.3d at 580; RESTATEMENT (SECOND) OF TORTS § 552(1).  Nothing is said about expanding the equitable powers of the court to enlarge insurance coverage.  Furthermore, in adopting § 552, the *Presnell* court alluded to several Kentucky Court of Appeal decisions suggesting that Kentucky would recognize claims for negligent misrepresentation.  One such case, *Morton v. Bank of the Bluegrass & Trust Co.*, recognized what appears to be the plain import of § 552(1) when it held that "only compensatory damages are allowed for" negligent misrepresentation claims.  *Morton v. Bank of the Bluegrass & Trust Co.*, 18 S.W.3d 353 (Ky.App. 1999).  Accordingly, Plaintiffs are not estopped from denying coverage for the claims raised in the state court action.

17

## III.

To summarize the Court's holding, Plaintiffs's duty to indemnify Defendants under the commercial general liability policy extends only to bodily injury and property damages that resulted from noise and only to the extent that such injuries and damages were not intentional. Furthermore, Plaintiffs owe no duty to indemnify Defendants under this policy for punitive damages or damages to air, land or water.

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1.      The Plaintiffs Motion for Summary Judgement [R. 42] is **GRANTED IN PART** and **DENIED IN PART;**

2.      Defendants' Cross-Motion for Summary Judgement [R. 44] is **GRANTED IN PART** and **DENIED IN PART**;

3.      Judgment will be entered contemporaneously herewith;

4.      Jury trial in this matter is **CANCELLED**; and

5.      This matter is stricken from the Court's active docket.

This the 27th day of January, 2010.



**Signed By:**

*Gregory F. Van Tatenhove*

**United States District Judge**